*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ADAM FERGUSON, also known as ADAM
FERGERSON,

        Defendant-Appellant.

UNPUBLISHED
August 12, 2025
1:56 PM

No. 356714
Saginaw Circuit Court
LC No. 91-004624-FC

Before: YATES, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

Following a remand from the Michigan Supreme Court, defendant, Adam Ferguson,[1] appeals as on leave granted an order denying a successive motion for relief from judgment.[2] He contends that his sentences violated the United States and Michigan Constitutions, that his sentences for drug offenses were improper, and that his waiver into adult court was unconstitutional. Ferguson argues that the sentencing court needed to consider the mitigating factors of youth and that Ferguson was improperly given a de facto life sentence for crimes he committed as a minor. We remand for resentencing.

## I. FACTUAL BACKGROUND

This Court, in its 1997 opinion issued after Ferguson's direct appeal of his convictions, set forth the crimes Ferguson committed and the sentences imposed:

> Defendant received concurrent sentences of six years, eight months to ten years in prison on the assault with intent to do great bodily harm convictions,

---

[1] As then-appellate counsel mentioned in the 1994 Motion for New Trial, Ferguson's name is Adam Fergerson but to be consistent with the trial court, we use "Ferguson" throughout these proceedings as well.

[2] See *People v Ferguson*, 511 Mich 1020; 991 NW2d 576 (2023).

> twenty-five to fifty years in prison each for the armed robbery, kidnapping and conspiracy to commit murder and/or extortion convictions, thirteen to twenty years for extortion, as well as twenty to forty years on the delivery conviction and twenty to forty years on the possession with intent to deliver conviction, twenty to forty years on the conspiracy to deliver conviction, and . . . the mandatory two-year term on the felony-firearm conviction. The sentences for the delivery, possession with intent to deliver, and conspiracy to deliver convictions were to be consecutive to the concurrent terms on the other sentences as well as with each other. As required by statute, the sentence on the felony-firearm conviction was also consecutive, to be served prior to the remaining sentences. [*People v Ferguson*, unpublished per curiam opinion of the Court of Appeals, issued May 10, 1996 (Docket No. 146333), p 1.]

This Court affirmed Ferguson's convictions but remanded for resentencing on one count, conspiracy to deliver less than fifty grams of cocaine. *Id*. at 4. At his earliest release date, Ferguson would be 74 years old.[3] Ferguson was 17 years old when he committed the offenses at issue in this appeal.

In 2020, after his first motion for relief from judgment was denied, Ferguson filed a successive motion for relief from judgment, asserting that his attorneys had been ineffective for failing to raise certain jurisdictional issues and also arguing that his sentences violated the constitutional protections against cruel and unusual punishment for juveniles; he cited *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016).[4]

The trial court denied the motion for relief from judgment, concluding that Ferguson had not established a retroactive change in the law to allow for a successive motion for relief from

---

[3] Ferguson contends that if disciplinary credits are not considered, his earliest release date will actually be when he is 84 years old. Whether to consider disciplinary credits in a constitutional analysis of a sentence is a live question in our courts, particularly given the outcome in *People v Nard*, ___ Mich App ___, ___; ___ NW3d___ (2025) (Docket No. 369185), in which defendant's parole status, afforded in part due to good time credits, led the Court to conclude that a 60-year minimum sentence was not a de facto life sentence. Here, appellant's reply brief addresses this issue thoroughly, but we conclude that whether we consider good time credits or not, *People v Eads (On Remand)*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 357332) would control and we find that this case is distinguishable from *Nard*. Thus, we decline to address this issue at this time.

[4] In *Miller*, the United States Supreme Court concluded that the imposition of mandatory life sentences without parole for those under the age of 18 at the time of their crimes violates the Eight Amendment protection against cruel and unusual punishment. *Miller*, 567 US at 465. In *Montgomery*, 577 US at 212, the Court concluded that *Miller* applies retroactively on collateral review.

judgment under MCR 6.502(G)(2) because both *Miller* and *Montgomery* were issued before Ferguson's first motion for relief from judgment.

Ferguson filed a delayed application for leave to appeal. This Court denied the application. *People v Ferguson*, unpublished order of the Court of Appeals, entered July 26, 2021 (Docket No. 356714). Ferguson then filed an application for leave in the Michigan Supreme Court, which remanded as on leave granted. *People v Ferguson*, 511 Mich 1020; 991 NW2d 576 (2023).

The parties then filed a stipulated motion to dismiss the appeal and remand for resentencing. In the stipulated motion, the parties cited recent developments in the caselaw and stated:

> 12. After a full review of the record and the developing caselaw, both parties agree to a full resentencing of Adam Ferguson to mitigate any possible constitutional issues or deficiencies with his now-existing sentence.
>
> 13. Given that Adam Ferguson has served more than 33 years on his sentence, both parties likewise concur that they will ask the trial court to fashion a sentence that will make Ferguson eligible for a parole hearing immediately upon resentencing.
>
> 14. The parties further agree that, at resentencing, Saginaw County will not seek (1) consecutive sentencing for Mr. Ferguson's drug convictions under MCL 333.7401(3); or (2) application of MCL 333.7413(2)'s sentencing enhancement doubling the maximum and minimum sentence for his drug offenses.

This Court declined to dismiss the appeal, stating, in relevant part, "[t]he Court, however, lacks the authority to remand to correct an arguably valid, albeit mutually undesirable, sentence." *People v Ferguson*, unpublished order of the Court of Appeals, entered August 13, 2024 (Docket No. 356714). Following oral argument, both parties filed supplemental pleadings addressing this Court's recent decision in *People v Nard*, ___ Mich App ___, ___; ___ NW3d___ (2025) (Docket No. 369185). We now consider Ferguson's claims as to the constitutionality and proportionality of his sentences.

## II. ANALYSIS

"[This Court] review[s] a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "Whether a defendant's sentence constitutes cruel and/or unusual punishment under the Eighth Amendment of the United States Constitution or Article 1, § 16 of the Michigan Constitution are questions of constitutional law that [this Court] review[s] de novo." *People v Stovall*, 510 Mich 301, 312; 987 NW2d 85 (2022).

At the time of Ferguson's motion, MCR 6.502(G)(2) stated that "a defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion." The trial court, as noted, concluded in large part that because *Miller* and *Montgomery* preceded Ferguson's successive motion for relief from judgment, there had been no

such change in the law. Importantly, however, the prosecutor now explicitly concedes that MCR 6.502(G)(2) does not bar the motion, stating:

> Given that our Supreme Court has granted leave in this case, and that more than three years have passed since the trial court initially denied the motion for relief from judgment, with substantial amendments to juvenile caselaw in the intervening years, Plaintiff-Appellee does not contest that the two issues Defendant-Appellant raised in his motion for relief from judgment are not procedurally barred by MCR 6.502(G).

We agree that Ferguson has met the procedural hurdle in MCR 6.502(G). Ferguson's challenges to his sentence also survive the additional barriers imposed by MCR 6.508(D)(2) and (3). To begin, Ferguson was acting *in propria persona* when filing his motion for relief from judgment and his application for leave. See *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021) ("[P]laintiff proceeded *in propria persona* during critical portions of the proceedings below; therefore, his pleadings during that period are entitled to more generous and lenient construction than they would be if his pleadings had been prepared by a lawyer."). In addition, he argued in his motion that "cases [now] distinguish the mental differences between juvenile[s] and adults" and that the mitigating factors of youth needed to be considered. He referenced cruel and unusual punishment in general, without citing any constitutional provision. In his application for leave to appeal, Ferguson again mentioned cruel and unusual punishment without citing a constitutional provision and added that his "rights as a juvenile" had not been protected. As stated in *Hein*, "[a]ppellate consideration is not precluded merely because a party makes a more sophisticated or more fully developed argument on appeal than was made in the trial court." *Id*. at 114-115.

We disagree with the prosecutor's assertion that this Court should not consider the issue regarding the Michigan Constitution. And, given our state-specific cruel or unusual punishment jurisprudence, the very jurisprudence the prosecutor concedes *procedurally* permits Ferguson's motion, Ferguson has good cause for failing to raise this issue earlier and the plain-error standard has been met.[5] If we were to conclude that Ferguson did not include adequate legal support in his motion, Ferguson could file an additional motion and cite the caselaw we discuss herein, specifically, *People v Eads (On Remand)*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No.

---

[5] This Court reviews unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under the plain-error doctrine, reversal is warranted if a "clear or obvious" error occurred that "affected the outcome of the lower court proceedings." *Id*. If this standard is satisfied,

> an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 763-764 (citation, quotation marks, and brackets omitted).]

357332), which was decided after his instant filing. Requiring that of an indigent defendant is neither necessary nor efficient.

Before we turn to *Eads*, we briefly address another recent opinion from this Court, *People v Nard*, ___ Mich App ___, ___; ___ NW3d___ (2025) (Docket No. 369185). As mentioned above, we received supplemental briefing from both parties addressing this case. We find *Nard* to be distinguishable from the instant case. The difference between the defendants in *Nard* and *Eads*, and also between the respective defendants in *Nard* and the present case, is that the one of the defendants in *Nard* filed an as-applied challenge to his sentence, and in large part because he has been out of prison and on parole since July 17, 2024, his sentence was deemed constitutional. *Nard*, ___ Mich App at ___; slip op at 3. Eads, like Ferguson, remained incarcerated with a questionable likelihood of ever leaving prison in advance of his death, and both presented facial challenges to their sentences. *Eads*, ___ Mich App at ___; slip op at 10-11. So, we turn to *Eads*.

In *Eads*, this Court stated:

> In 1992, the defendant, James Gregory Eads, was found guilty of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for crimes he committed as a juvenile. The trial court sentenced Eads as an adult and, departing upward from the guidelines, imposed consecutive terms of 50 to 75 years' imprisonment for second-degree murder and two years' imprisonment for felony-firearm. [*Eads*, ___ Mich App at ___; slip op at 1.]

Eads's case was subject to automatic waiver to the circuit court. *Id*. at ___; slip op at 2 n 3.

This Court considered Eads's motion for relief from judgment[6] and concluded that Eads's sentences violated the Michigan Constitution, stating:

> The Michigan Constitution prohibits cruel or unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel and unusual punishment, US Const, Am VIII." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). The Michigan Constitution, in this respect, contains broader language and correspondingly provides greater protection than the United States Constitution. *Stovall*, 510 Mich at 313-314.

> As discussed, our Supreme Court in *Stovall* has already made clear that a parolable life sentence is unconstitutionally cruel or unusual for a juvenile convicted of second-degree murder. In so concluding, the Court acknowledged that "[a] trial court could impose a long term-of-years sentence that would theoretically deprive a defendant of any chance of being paroled during their lifetime," but it expressly declined to opine "on whether a long term-of-years sentence imposed on a juvenile would violate Const 1963, art 1, § 16." *Id*. at 314 n 3. We conclude that, here, it does: while Eads received a long term-of-years sentence rather than life with

---

[6] It stated that *Miller* and its progeny were a retroactive change in the law. *Id*. at ___; slip op at 5.

the possibility of parole like the defendant in *Stovall*, we cannot find sound reason to deem his sentence constitutionally permissible when the parolable life sentence at issue in *Stovall* was not. [*Eads*, ___ Mich App at ___; slip op at 8-9.]

This Court further stated that an imprisoned person has a life expectancy of approximately 64 years and that this figure probably overstated the life expectancy of minors committed to long prison terms. *Id*. at ___; slip op at 9. It explained, "[e]ven if we were to assume Eads's life expectancy to be 64 years of age—the same as an individual who enters prison as an adult, which he is not—Eads must serve a term of years requiring him to surpass this life expectancy before he may become even *eligible* for parole for the first time." *Id*. at ___; slip op at 9-10. Citing *Stovall*, the *Eads* Court concluded that this was a particularly harsh punishment to be imposed on a juvenile, considering the mitigating factors of youth. *Id*. at ___; slip op at 10. It noted that Eads's sentence was harsher than the parolable life sentence deemed unconstitutional in *Stovall* because the defendant in *Stovall* would be eligible for parole after 10 years. *Id*. at ___; slip op at 10 & n 17.

This Court also noted that juveniles convicted of first-degree murder received more protections than Eads had:

> As noted by the *Stovall* Court, the "practical" realities of sentencing and parole are that a juvenile convicted of second-degree murder faces a sentence the same as or more severe than what is now given to most juveniles convicted of first-degree murder. See *Stovall*, 510 Mich at 316-318. A juvenile convicted of first-degree murder post-*Miller* faces, by default, a minimum sentence of 25 to no more than 40 years under MCL 769.25. See *id*. at 316. A juvenile convicted and sentenced for first-degree murder pre-*Miller* initially received a harsher sentence, but *Miller* and MCL 769.25a entitled the juvenile to resentencing such that he or she, by default, could not receive a term-of-years sentence with a minimum higher than 40 years or a maximum higher than 60 years. See MCL 769.25a(4)(c). Eads, on the other hand, received a sentence of 50 to 75 years' imprisonment—a minimum sentence 10 years higher and a maximum sentence 15 years higher than those statutory upper limits—for committing a lesser offense as a juvenile. See *Stovall*, 510 Mich at 316-317; see also MCL 769.25a(4)(c). And he received that sentence without any of the significant procedural safeguards that must be satisfied to exceed those statutory limits for first-degree murder. [*Eads*, ___ Mich App at ___; slip op at 11.]

The *Eads* Court stated, "[w]e fail to see how Eads's 50-to-75-year term-of-years sentence for second-degree murder could pass muster under the Michigan Constitution's prohibition against cruel or unusual punishment, when the parolable life sentence at issue in *Stovall* could not." *Id*. at ___; slip op at 13. This Court additionally concluded that

> [f]or many of the substantive reasons already discussed, a term of 50 to 75 years' imprisonment is disproportionate to Eads and the circumstances surrounding his offense given his status as a juvenile at the time that he committed the offense and the inherent, constitutionally significant differences between juveniles and adults for purposes of sentencing. . . .

\*     \*     \*

> For the reasons discussed, *Miller* and its progeny have rendered Eads's term-of-years sentence invalid under both the Michigan Constitution and our state's proportionality requirement. He is entitled to be resentenced in a manner that comports with this jurisprudence and duly accounts for his youth and its attendant characteristics at the time he committed the offense at issue. [*Id*. at ___; slip op at 15.]

In sum, *Eads* categorically bars a minimum of 50 years for second-degree murder for a juvenile.[7] *Eads* provides strong support in favor of resentencing Ferguson.

While it is true that Ferguson committed multiple offenses, some of which were violent (assault with intent to do great bodily harm, for example), the extraordinary length of his sentence resulted from nonviolent drug offenses. Specifically, the trial court applied two sentencing enhancements for Ferguson's drug offenses, which increased his minimum term of imprisonment by 40 years, without considering his youth or any mitigating qualities. One of these enhancements, which caused the sentences for Ferguson's drug offenses to run consecutively, was mandatory at the time of sentencing, and is now discretionary. See MCL 333.7401(3). An additional enhancement was for repeat drug offenders, see MCL 333.7413(2), based on Ferguson's prior conviction for possession of less than 25 grams of cocaine.

Ferguson received concurrent sentences for the other offenses (aside from felony-firearm). See, e.g., *Ferguson*, unpub op at 3-4. Accordingly, absent the drug convictions, he would have had a 27-year minimum sentence length and would have been eligible for parole within his

---

[7] That categorical bar is the remedy for a facial constitutional challenge. *Stovall*, 510 Mich at 322; (applying *Bullock* to conclude that parolable life sentence for a defendant who commits second-degree murder while a juvenile violates the Michigan Constitution). A facial constitutional challenge is distinguishable from the issue in *People v Moore*, 432 Mich 311; 439 NW2d 684 (1989), wherein the defendant challenged the length of his sentence under the Indeterminant Sentencing Act and not the Michigan or Federal Constitutions. The concurrence relies on *Moore* to undermine *Eads* but because *Moore* was not a facial constitutional challenge, and is thus inapt, we decline to do the same. The concurrence also faults *Eads* as being "antithetical to the principle of proportionality derived from the Michigan Constitution." In fact, *Eads* upholds that very principle, finding *both* that Eads' sentence was "so disproportionate as to be unconstitutionally cruel or unusual" *and* that it violated the "nonconstitutional principle of proportionality discussed in *People v Milbourn*, 435 Mich 630, 650; 461 NW2d 1 (1990)." *Eads* ___ Mich App at ___; slip op at 10. *Eads* did justice to the "province and duty of the judicial department to say what the law is," and, as is required of us, we apply it here. *Marbury v Madison*, 1 Cranch 137, 177; 5 US 137, 177 (1803); see also, *Straman v Lewis*, 220 Mich App 448, 451; 559 NW2d 405 (1996) ("[T]he publication of an opinion of this Court creates binding precedent statewide . . . the opinion remains binding until such time as a decision of the Supreme Court enters altering the lower court decision or questioning its rationale.").

expected lifespan. The drug offenses added 40 years to the minimum sentence length (two consecutive sentences of 20 years each for the minimums).

This sentence enhancement, resulting in a minimum sentence of 67 years, does not pass muster under *Eads*. In *Stovall* and *Eads*, the defendants' convictions were for first and second degree murder, respectively. *Stovall* and *Eads* both recognized that "second-degree murder is a grave offense," and that "first-degree murder is almost certainly the gravest and most serious offense that an individual can commit under the laws of Michigan." *Eads*, ___ Mich App at ___; slip op at 14-15, citing *Stovall*, 510 Mich at 315-317. Here, although Ferguson's behavior was quite serious, the bulk of his lengthy minimum sentence was due to nonviolent drug offenses. Put differently, if sentencing a young person to a minimum of 50 years is a disproportionate sentence for murder, then it follows it would be disproportionate for a non-homicide offense as well. See generally, *Graham v Florida*, 560 US 48; 130 S Ct 2011, 176 L Ed 2d 825 (2010); *Miller v Alabama*, 567 US 460. As a result, we reverse the denial of Ferguson's motion for relief from judgment and remand for resentencing.[8] We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Randy J. Wallace

---

[8] Ferguson also presents arguments about his waiver into adult court. This issue has been rendered moot, because the relief Ferguson requests—resentencing—is afforded by way of applying *Eads*.